IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MONIKA P. KATER,                    )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )    Civil Action No.: 1:17cv301-WC
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social Security, )
                                     )
        Defendant.                   )

# MEMORANDUM OPINION

**I.    INTRODUCTION**

Monika Pastula Kater ("Plaintiff") filed an application for a period of disability and disability insurance benefits on April 28, 2013, alleging disability beginning on March 28, 2013. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that decision

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 16); Def.'s Consent to Jurisdiction (Doc. 15). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-seven years old on the date of the hearing before the ALJ. Tr. 922. Plaintiff completed high school and some coursework at "x-ray school" before entering and graduating from a police academy. Tr. 922. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since March 28, 2013, the alleged onset date[.]" Tr. 72. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "major depressive disorder, post-traumatic stress disorder, degenerative disc disease, hiatal hernia, and thyroiditis." Tr. 72. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 73. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform light work . . . except that the claimant can stand and/or walk six total hours in an eight-hour workday, sit six hours total in an eight-hour workday; push/pull without limitation; can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; should avoid exposure to extreme cold and heat; and should avoid hazards, moving mechanical parts and high, exposed places. Additionally, the claimant is able to perform simple, routine, repetitive tasks; concentrate and persist for two-hour segments; must be limited to work with occasional interaction with the public and coworkers; and is unable to meet fast paced, high production demands.

Tr. 75. At Step Four, having consulted with a VE, the ALJ concluded that Plaintiff is "unable to perform any past relevant work." Tr. 81. The ALJ next concluded, at Step Five, that "there are jobs that exist in significant numbers in the national economy that the

5

claimant can perform." Tr. 82. Based upon the testimony of the VE, the ALJ identified the following as representative occupations: "housekeeper," "warehouse checker," and "garment sorter." Tr. 82. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability . . . from March 28, 2013, through the date of this decision[.]" Tr. 83.

## IV. PLAINTIFF'S ARGUMENT

Plaintiff presents three issues in her "Statement of Issues": a) "The ALJ committed error in determining the claimant's physical residual functional capacity;" b) "The ALJ failed to properly apply the pain standard;" and c) "[T]he ALJ erred in determining the claimant's psychological/psychiatric residual functional capacity." Pl.'s Br. (Doc. 12) at 1.

## V. DISCUSSION

### A. The ALJ's determination of Plaintiff's physical RFC.

Plaintiff first argues that the ALJ failed to properly credit the opinion of her treating physician regarding her physical limitations and, therefore, "did not properly determine the claimant's physical functional capacity[.]" Doc. 12 at 4. In particular, Plaintiff asserts that, because the ALJ failed to recognize the duration of her relationship with her treating physician, the ALJ did not give the opinion appropriate weight. *Id.* at 2-3. Plaintiff also appears to argue—without specifics—that the ALJ improperly determined her RFC because he did not discuss Plaintiff's medications' side effects in his decision. *Id.* at 4.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the

6

claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Medical opinions provided by treating sources are especially significant in the ALJ's RFC assessment. Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41.

Plaintiff began seeing her treating physician, Dr. Serrato, for pain management on October 1, 2014. Tr. 830. Between October 1, 2014, and August 10, 2015, Plaintiff saw Dr. Serrato, or a nurse in his practice, on a nearly monthly basis for treatment of her pain. Tr. 814-829. Then, on November 2, 2015, Dr. Serrato completed a Physical Capacities Evaluation on Plaintiff's behalf for her submission in her disability administrative proceedings. Tr. 912-13. On the form, Dr. Serrato indicated his opinion about the extent to which Plaintiff can perform various occupational functions given her impairments. In general, Dr. Serrato's opinion was that Plaintiff is severely restricted in her ability to

7

perform several ordinary occupational functions, and that Plaintiff's limitations have existed for more than one year and can be expected to last for more than a year. *Id.* Dr. Serrato also noted on the form that he "first examined" Plaintiff on October 1, 2014. Tr. 913.

In his opinion, the ALJ first noted, erroneously, that Plaintiff "became a patient of treating physician Dr. Serrato . . . in October 2015." Tr. 79. After summarizing Dr. Serrato's opinion, however, the ALJ restated Dr. Serrato's assertion that he had observed Plaintiff's limitations "since October 2014 at the first examination[.]" Tr. 80. The ALJ then proceeded to give Dr. Serrato's opinion "[l]ittle weight" because of, "foremost," the "relatively short treatment history with the claimant" and because Dr. Serrato's opined limitations "are not reasonably supported by the medical evidence of record and [are] not consistent with the doctor's own treatment notes[.]" Tr. 80. By way of example of the latter point, the ALJ noted the following from Dr. Serrato's treatment notes: a) that Plaintiff complained of "cervical spine and lumbar pain that 'waxes and wanes in severity[;]'" b) that Dr. Serrato noted only 'mild' degenerative changes, normal neurological examinations, normal motor strength and good range of motion of legs and arms;" c) that there were "no medication changes" and "no interest in epidurals;" d) and that Dr. Serrato had noted that Plaintiff's medications "were continuing to help control pain and that the claimant was 'relatively stable.'" Doc. 80.

Plaintiff's argument that the ALJ erred in his treatment of her treating physician's opinion is unavailing. Rather than arguing, with citations to law and record evidence, that

8

the ALJ improperly relied upon the "relatively short" duration of her relationship with her treating physician or upon the fact that her treating physician's opinion is inconsistent with the objective medical evidence in the record and his own treatment notes, Plaintiff appears to rest her entire argument on the ALJ's apparent oversight in stating that she began seeing Dr. Serrato in October of 2015, rather than October of 2014. *See* Doc. 12 at 2, 3. Of course, even to the extent that the ALJ indeed erred in this observation, it is apparent that it was only a harmless oversight on the part of the ALJ, as it was corrected only a few sentences later when the ALJ accurately noted Dr. Serrato's statement that he began seeing Plaintiff in October of 2014. Tr. 80. Accordingly, so long as the actual reasons the ALJ gave for affording Dr. Serrato's opinion little weight are supported by substantial evidence, this court cannot find reversible error.

Upon review, the ALJ's decision is indeed supported by substantial evidence. First, Plaintiff points to nothing disputing the ALJ's observation that she indeed has a "relatively short treatment history" with Dr. Serrato. Although her treatment history was approximately eleven months at the time Dr. Serrato rendered his opinion, Plaintiff has not provided anything showing that eleven months would not, in general, constitute a relatively short treatment history, especially for pain management. More importantly, however, Plaintiff points to nothing in the record demonstrating that the numerous other reasons the ALJ gave for affording Dr. Serrato's opinion little weight are not supported by substantial evidence. It is true that Plaintiff stated that the severity of her experience of pain "waxes and wanes." *See* Tr. 830 (Oct. 1, 2014), 820 (Feb. 9, 2015), and 815 (July 9, 2015). Indeed,

Dr. Serrato's treatment notes establish that, on a scale of one to ten, Plaintiff variously reported either a four or six as to her "Pain Intensity" at her visits with Dr. Serrato. *See* Tr. 831 (4, October 1, 2014); 827 (6, October 30, 2014); 824 (4, December 2, 2014); 821 (6, December 31, 2014); 819 (6, March 10, 2015); 818 (6, April 8, 2015); 817 (6, May 6, 2015); 816 (6, June 4, 2015); and 814 (4, August 10, 2015). This conflicts with Dr. Serrato's report in his Physical Capacities Evaluation that the "usual severity" of Plaintiff's pain is a seven. *See* Tr. 913. In other words, Dr. Serrato opined that Plaintiff's pain intensity is usually more severe than even what Plaintiff reported to him in her visits for treatment of her pain. This fact alone supports the ALJ's conclusion that Dr. Serrato's opinion is contradicted by his own treatment records.

In addition to the foregoing, and as noted by the ALJ, Dr. Serrato found only "mild degenerative changes in the neck and back." *See* Tr. 827. It is likewise accurate that Dr. Serrato's objective findings with respect to his neurological and physical examination of Plaintiff were largely normal. Tr. 831. Finally, the ALJ accurately found that Dr. Serrato repeatedly noted that Plaintiff was "stable" and in need only of continuing on her medications to treat her pain. Tr. 824, 821, 819, 818, 816, and 814. Indeed, Plaintiff reported at her March 10, 2015, visit that her medications "are keeping her comfortable," and at her July 9, 2015, visit that they are helping to control her pain. Tr. 815, 819. Plaintiff points to nothing in Dr. Serrato's treatment notes corroborating the severe limitations on her functional abilities opined by Dr. Serrato. As such, the ALJ's finding that finding that Dr. Serrato's opinion is inconsistent with his own treatment notes is supported by

substantial evidence, and the ALJ did not reversibly err in his decision to afford Dr. Serrato's opinion little weight.

Plaintiff also appears to argue that the ALJ erred because he did not "consider" Dr. Serrato's opinion related to Plaintiff's side effects from her medications. Doc. 12 at 4. In his Physical Capacities Evaluation, Dr. Serrato opined that Plaintiff's medications interfere with her ability to work because they can cause drowsiness and affect her "concentration/focus." Tr. 913. However, Plaintiff points to no instance in the record, where she actually complained about such side effects from her medications. Indeed, the only instance in Dr. Serrato's treatment notes prior to his opinion about Plaintiff's side effects where he sought to address any issue with medication side effects occurred on December 31, 2014, when Plaintiff complained of gastro-intestinal issues related to her taking Celebrex. Tr. 821. Dr. Serrato advised her to take the medication every other weekday to "give her GI system a rest every other day[.]" *Id.* Nothing in Dr. Serrato's treatment notes support that Plaintiff experiences disabling side effects from her medications. As such, the ALJ did not err in failing to credit Dr. Serrato's opinion that the side effects of Plaintiff's medications interfere with her ability to work.

**B.     The ALJ's application of the pain standard.**

After a brief explanation of the Eleventh Circuit's "pain standard" and a cursory review of Plaintiff's impairments, Plaintiff next argues, summarily, that "the

Commissioner did not properly apply the pain (and/or fatigue) standard, which was error." Doc. 12 at 5. Plaintiff's argument is without merit.

Where, as here, a claimant attempts to prove her disability by, in part, offering subjective testimony about pain, the courts in this Circuit require "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Where the record "shows that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Miles v. Comm'r of Soc. Sec.*, 652 F. App'x 923, 926 (11th Cir. 2016). While assessing the credibility of a claimant's statements about her pain, the ALJ must consider, in addition to objective medical evidence, a host of other factors, including the claimant's "daily activities; the location, duration, frequency, and intensity of the individual's pain; precipitating and aggravating factors;" the effectiveness and side effects of the claimant's medications, and the course of treatment the claimant has sought for her symptoms. *Id.* (citation omitted). Where the ALJ "discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. Ultimately, however, "credibility determinations are the province of the ALJ, and [courts] will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir.

12

2014) (citations omitted). In shorthand, the Eleventh Circuit has referred to these adjudicatory principles as the "pain standard." *See, e.g., Wilson*, 284 F.3d at 1226.

Plaintiff argues that the ALJ failed to abide these principles because she presented "evidence of an underlying medical condition (satisfying part one) that could reasonably be expected to produce the claimant's alleged pain (and/or fatigue) (satisfying part three)." Doc. 12 at 4. Plaintiff is correct, for as the ALJ concluded: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" Tr. 76. The rub for Plaintiff, however, is that the "pain standard" does not end upon completion of that phase of the inquiry. In other words, a finding of disabling pain is not required by a determination that medically determinable impairments could reasonably cause the symptoms about which Plaintiff complains. Rather, as set forth above, where this is the case, the ALJ is then required to assess Plaintiff's credibility pursuant to the factors discussed previously. It is here that Plaintiff's claim fails, as the ALJ went on to conclude that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 76.

The ALJ gave myriad reasons why he found Plaintiff's subjective statements about the intensity of her pain (or fatigue) less than fully credible, including the following: insufficient objective medical evidence supporting the severity of Plaintiff's alleged symptoms (Tr. 76-80); the nature and character of Plaintiff's daily activities (Tr. 80);

13

Plaintiff's statements to the effect that she quit work so that she could move with her husband (Tr. 80 [referencing Tr. 572]); and recorded instances of Plaintiff's noncompliance with prescribed medications (Tr. 81 [referencing Tr. 572]). Most salient in the ALJ's credibility determination, however, was the ALJ's reliance on specific instances in which Plaintiff directly misled her medical providers. *See* Tr. 81. Specifically, in July 2015, Plaintiff told her treating endocrinologist that she is an avid horseback rider who is "very active with lifting and other 'barn chores.'" Tr. 755. However, only a few months later, in her testimony before the ALJ, she testified that she was only telling her physician what she believed he wanted to hear. Tr. 944. She thus openly admitted to being untruthful with her physician. Tr. 945. In addition to misleading her treating endocrinologist, Plaintiff appears to have misled one of her medical providers about her efforts to acquire prescribed medications. On May 30, 2014, Plaintiff requested a refill of her Ativan prescription despite that her prescription record indicated that she had already filled the prescription earlier in the month. Tr. 852. The provider "asked her 4 times when was the last time she got any anxiety meds refilled from her psychiatrist and she stated months, around Jan or Feb[.]" Tr. 852. Plaintiff's provider advised that "she should always be honest with her provider about her meds." Tr. 852.

In sum, the bases provided by the ALJ for his credibility determination are supported by substantial evidence in the record. Plaintiff specifically challenges none of

14

them in her brief. *See* Doc. 12 at 4-5. Thus, the ALJ correctly applied this Circuit's "pain standard" in his decision. Plaintiff's cursory argument otherwise is without merit.

C. **The ALJ's determination of Plaintiff's psychological/psychiatric RFC.**

Plaintiff's final argument is that the ALJ erred in his determination of her psychological or psychiatric RFC because the ALJ did not fully credit the opinion of her treating psychiatrist, Dr. Mieles. Doc. 12 at 6-7. The record indicates that Plaintiff began seeing Dr. Mieles in August 2014 for treatment of her various mental disorders, including post-traumatic stress disorder, depression, panic disorder, and bipolar disorder. Tr. 910. Over the next fourteen months, Plaintiff visited Dr. Mieles approximately nine times. Tr. 887-909. On October 23, 2015, based upon his observations and treatment of Plaintiff, Dr. Mieles completed a Psychiatric/Psychological/Mental Evaluation form questionnaire concerning his impressions of Plaintiff's ability to do work-related activities given her mental impairments. Tr. 882-86. Dr. Mieles's overall opinion is that, due to her numerous symptoms, Plaintiff is mostly markedly limited in her functional abilities, such as social functioning and maintaining concentration, and has essentially no ability to do work-related activities such as following work rules, dealing with co-workers, supervisors, and the public, coping with work stressors, and functioning independently. Tr. 883-84. Dr. Mieles also opined that Plaintiff has poor-to-no ability to understand, remember, and carry-out even simple job instructions or behave in an emotionally stable manner and relate predictably in social situations. Tr. 885. Dr. Mieles further opined that he would expect

Plaintiff to miss work more than once a week due to her symptoms and that Plaintiff cannot manage money in her own interest. Tr. 886.

In his opinion, the ALJ found that Plaintiff suffers from severe mental impairments, including major depressive disorder and post-traumatic stress disorder. Tr. 72. However, despite Dr. Mieles's overwhelmingly negative assessment of Plaintiff's mental functioning and ability to do work-related activities, the ALJ found that Plaintiff's mental residual functional capacity is, even if limited, not disabling: "Additionally, the claimant is able to perform simple, routine, repetitive tasks; concentrate and persist for two-hour segments; must be limited to work with occasional interaction with the public and coworkers; and is unable to meet fast paced, high production demands." Tr. 75.

Plaintiff cursorily appears to argue that the ALJ erred in his mental RFC assessment because the ALJ did not reach the same conclusions as Dr. Mieles. Doc. 12 at 5-7. Indeed, the ALJ afforded Dr. Mieles's opinion "little weight" for many of the same reasons that he gave for disregarding Dr. Serrato's opinion, including the relatively short duration of Dr. Mieles's treatment relationship with Plaintiff and that Dr. Mieles's opinion is inconsistent with his own treatment records and with the record as a whole. Tr. 77. As examples, the ALJ noted the following: "aggressive treatment and/or inpatient care was never rendered or recommended, the claimant was consistently deemed a low risk for suicide and violence, and she was also assessed as alert, with mild memory loss, normal cognitive functioning and fair judgment and insight." Tr. 77. The ALJ also found salient that Plaintiff herself researched and persuaded Dr. Mieles to prescribe her use of a service animal, and that

16

Plaintiff nevertheless sometimes chooses not to use her service animal in social situations. Tr. 77.

Plaintiff specifically disputes none of the ALJ's bases for disregarding Dr. Mieles's opinion and, upon review, those reasons are supported by substantial evidence. In particular, the ALJ correctly observed that the severe and disabling limitations opined by Dr. Mieles are inconsistent with the record as a whole and with Dr. Mieles's own treatment notes, where Plaintiff sometimes professed to be improving or feeling better with her depression, and often presented with normal cognitive functioning, normal or mild memory issues, and intact or adequate judgment and insight. *See, e.g.,* Tr. 568, 569, 570, 716, 718, 719, 720, 722, 888, 900, and 905. The record also supports the ALJ's finding that treatment of Plaintiff's mental impairments was conservative, with "aggressive" or "inpatient care . . . never rendered." Tr. 77. Finally, it is apparent that Dr. Mieles's opinion was based largely on Plaintiff's reporting of her symptoms to him. *See, e.g.,* Tr. 887 (noting Plaintiff's reporting of "[c]ontinued depressive symptoms," "symptoms of mania interspersed with depressed mood," "periods of extreme restlessness or agitation," and "[s]ymptom of panic disorder"). *See also* Tr. 894, 900, 905, 907. As noted above, Plaintiff began seeing Dr. Mieles in August of 2014, well after she filed her application for disability benefits in April, 2013. Because the ALJ found Plaintiff less than fully credible in her reporting of her symptoms—and specifically noted two instances in which Plaintiff appears to have deceived medical providers regarding her activities and whether she had refilled a prescribed medication, *see* Tr. 80-81 (referencing Tr. 755 & 852)—the ALJ was further

justified in disregarding a medical opinion that was premised on Plaintiff's own reporting of her symptoms.

In addition to the foregoing, the extreme nature of the limitations opined by Dr. Mieles, especially that Plaintiff is unable to understand, remember, and carry-out even simple job instructions (Tr. 885) and is unable to manage money in her own interests (Tr. 886), are belied by her own efforts advocating on her behalf before the Commissioner and by her testimony before the ALJ. Dr. Mieles's opinion suggests a claimant unable to surmount even the most ordinary and basic mental challenges. However, the record is populated with numerous correspondences from Plaintiff predating the ALJ's decision concerning the progress and status of her application and appeals. *See* Tr. 368-378. These correspondences contain lengthy and detailed subjective summaries of Plaintiff's condition, updates as to her medications, complaints about the slow handling of her case and related financial stressors, and legal argument, with citations to applicable statutes, that she is legally unsuited to operate a motor vehicle. Even after the ALJ's decision, during the pendency of proceedings before the Appeals Council, Plaintiff continued to update the Commissioner in correspondences in which, among other things, she sardonically characterized the ALJ's treatment of the opinions of Drs. Serrato and Mieles (Tr. 379-80) and exhaustively catalogued her grievances with the ALJ's hearing and decision, including reciting the ALJ's "refusal rate," which she learned from internet research (Tr. 381-86). *See also* Tr. 387-388, 391. If nothing else, Plaintiff's demonstrated attention to detail and capacity for marshaling arguments from available records and research indicate that, when

motivated, she is able to perform even complex and demanding mental operations and functions. They do not provide quarter for the opinion that Plaintiff's mental impairments are so profound that she is unable to understand, remember, and carry-out even simple instructions. Likewise, Dr. Mieles opined that Plaintiff is unable to manage money in her own interest. Tr. 886. However, Plaintiff testified before the ALJ that she does all of her household's grocery shopping and "banking." Tr. 935. Because substantial evidence in the record thus shows Dr. Mieles's opinion to be dubious in its extremes, the ALJ was justified in concluding that the opinion is not supported by the record.

In summary, the ALJ gave Dr. Mieles's opinion about Plaintiff's mental limitations "little weight." The ALJ's reasons for doing so are supported by substantial evidence. Although Plaintiff appears to fault the ALJ for failing to fully credit Dr. Mieles's opinion about Plaintiff's limitations, Plaintiff presents no argument to refute the reasons the ALJ gave for disregarding Dr. Mieles's opinion. *See* Doc. 12 at 7. As such, Plaintiff has failed to show any error with respect to the ALJ's treatment of Dr. Mieles's opinion and, by extension, the ALJ's mental RFC findings.

## VI. CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 3rd day of July, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE